**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **FREDERICK BANKS,** | : | **CIVIL ACTION NO. 1:06-CV-1127** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **ONE OR MORE UNKNOWN** | : | |
| **NAMED CONFIDENTIAL** | : | |
| **INFORMANTS OF FEDERAL** | : | |
| **PRISON CAMP CANAAN, HARLEY** | : | |
| **LAPPIN, FEDERAL BUREAU OF** | : | |
| **PRISONS, CASE MANAGER MARK** | : | |
| **RENDA, COUNSELOR ART** | : | |
| **ROBERTS, CAMP** | : | |
| **ADMINISTRATOR JULIE NICKLIN,** | : | |
| **CAMERON LINDSEY, UNITED** | : | |
| **STATES OF AMERICA, MR.** | : | |
| **BENDER, LT. HESS, and SIX OR** | : | |
| **MORE UNKNOWN NAMED LT'S** | : | |
| **AND CORRECTIONAL OFFICERS** | : | |
| **OF USP CANAAN** | : | |
| | : | |
| **Defendants** | : | |

## <u>MEMORANDUM</u>

Presently before the court is the motion to dismiss or, in the alternative, for

summary judgment (Doc. 51), with respect to the amended complaint filed by *pro se*

plaintiff Frederick Banks ("Banks"), a former inmate of the Federal Prison Camp

and United States Penitentiary at Canaan ("FPC/USP-Canaan"). Defendants

include the United States, the Federal Bureau of Prisons ("BOP") and several of its

officials, and a number of individuals associated with FPC/USP-Canaan.[1]  For the

reasons that follow, the motion will be granted in part and denied in part.

---

[1] The individual defendants are BOP Director Harley Lappin, Case Manager
Marc Renda, Counselor Art Roberts, Camp Administrator Julie Nicklin, FPC/USP-
Canaan Warden Cameron Lindsey, and FPC/USP-Canaan Special Housing Unit
Shift Commanders Bender and Hess.  Banks has also named as defendants "One or
More Unknown Named Confidential Informants of Federal Prison Camp Canaan"
and "Six or More Unknown Named Lt's and Correctional Officers of USP-Canaan"
(collectively "the unknown named defendants").  (See Doc. 38.)  Federal Rule of
Civil Procedure 4(m) requires that service of a summons and complaint be
effectuated upon each defendant "within 120 days after the filing of the complaint."
The rule further provides that, if such service is not completed, the court must
"dismiss the action without prejudice as to that defendant."  FED. R. CIV. P. 4(m).
    In the instant case, Banks is not responsible to effectuate service personally
because he is proceeding *in forma pauperis*.  (See Doc. 10); see also 28 U.S.C.
§ 1915(c) (stating that "the officers of the court shall issue and serve all process"
when the plaintiff is proceeding *in forma pauperis*).  Nevertheless, Banks is
responsible to identify the parties named as defendants in order to permit the
United States Marshal to effectuate service within the time limit proscribed by
Federal Rule of Civil Procedure 4(m).  See Okagbue v. Ojekwe v. Federal Bureau of
Prisons, No. 03-2035, 2007 WL 4570075, at *3 (D.N.J. Dec. 26, 2007) (stating that a
prisoner must "furnish[] the Marshal with the necessary information to effect
service" before asserting that service defects should be excused for "good cause");
Goodwin v. LA Weight Loss Centers, Inc., No. 99-6339, 2001 WL 34387933, at *1
(E.D. Pa. 2001) ("*As long as the plaintiff provides adequate information to identify the
party to be served*, a complaint should not be dismissed under Rule 4(m) for the
Marshals Service's failure to effectuate proper service." (emphasis added)).  As of
the date of this memorandum and order, Banks has failed to provide sufficient
identifying information to permit service upon the unknown named defendants
(see Doc. 48), and far greater than 120 days have passed since the court directed
service of the amended complaint on September 13, 2007 (see Doc. 46).
Accordingly, the court must dismiss without prejudice all claims against the
unknown named defendants.  See FED. R. CIV. P. 4(m).

I.   **Statement of Facts**[2]

This action arises from events that occurred in April and May of 2006 while

Banks was incarcerated at FPC/USP-Canaan.  (See Doc. 38.)  In Banks' amended

complaint, he asserts <u>Bivens</u>,[3] Federal Tort Claims Act ("FTCA"), and 42 U.S.C.

_____

[2]   The instant motion is styled as a motion to dismiss or, in the alternative, for summary judgment.  The section of the motion asserting an exhaustion of administrative remedies defense is accompanied by "matters outside the pleadings."  See Fed. R. Civ. P. 12(d).  Therefore, the court will treat this section of the motion as a motion for summary judgment.  Id.  In accordance with the standard of review for a motion for summary judgment, the court will present the facts relevant to this section of the motion in the light most favorable to Banks, the non-moving party.  See infra Part II.  The court notes, however, that Banks failed to file a timely response to defendants' statement of undisputed material facts (Doc. 55) as required by Middle District of Pennsylvania Local Rule 56.1.  As a result, all facts set forth in defendants' statement of undisputed material facts (Doc. 55) are deemed admitted.  See L.R. 56.1 (stating that the moving party's statement of facts will be deemed "admitted unless controverted" by the opposing party).

The remainder of the motion will be disposed of as a motion to dismiss.  In accordance with the standard of review for a motion to dismiss, the court will present these facts as alleged in the complaint.  See infra Part II.  These facts reflect neither the findings of the trier of fact nor the opinion of the court as to the reasonableness of the parties' allegations.

[3]   <u>Bivens</u> actions are named for the United States Supreme Court case of <u>Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics</u>, 403 U.S. 388 (1971).  <u>Bivens</u> actions are the federal counterpart to § 1983 claims brought against state officials.  <u>Egervary v. Young</u>, 366 F.3d 238, 246 (3d Cir. 2004) (citing <u>Brown v. Philip Morris, Inc.</u>, 250 F.3d 789, 800 (3d Cir. 2001) ("A <u>Bivens</u> action . . . will lie where the defendant has violated the plaintiff's rights under the color of federal law.")).  They may be asserted only "against federal officials in their individual capacities, not the United States and federal agencies."  <u>Warren v. United States</u>, No. 07-4012, 2008 WL 2223055, at *1 (3d Cir. May 30, 2008) (citing <u>FDIC v. Meyer</u>, 510 U.S. 471, 473 (1984)).  Accordingly, no <u>Bivens</u> actions may lie against defendants the BOP and the United States in the instant action.  The <u>Bivens</u> claims against these defendants will be dismissed without further discussion.

3

§ 1985 conspiracy claims against defendants.[4]  (See id.)  The factual allegations

underlying Banks' claims follow.

On April 17, 2006, Banks was transferred to FPC/USP-Canaan and was

placed in administrative detention in the Special Housing Unit ("SHU").  (Doc. 38

¶ 26; Doc. 54-2 ¶ 3.)  Banks alleges that he was forced to remain in the SHU during

"a two month wait for bedspace."  (Doc. 38 ¶ 26.)  "Once Banks realized he would be

spending a significant amount of time in [the SHU]," he began to request access to

the law library, his legal papers, several individuals' mailing addresses, a telephone,

---

[4] Banks' amended complaint seeks both damages and injunctive relief.  (See
Doc. 38 at 9.)  It is well recognized that the adjudicatory power of a federal court
depends upon "the continuing existence of a live and acute controversy."  Steffel v.
Thompson, 415 U.S. 452, 459 (1974).  "[A]n actual controversy must be extant at all
stages of review, not merely at the time the complaint is filed."  Id. at 459 n.10
(citations omitted).  "Past exposure to illegal conduct is insufficient to sustain a
present case or controversy regarding injunctive relief if unaccompanied by
continuing, present adverse effects."  Rosenberg v. Meese, 622 F. Supp. 1451, 1462
(S.D.N.Y. 1985) (citing O'Shea v. Littleton, 414 U.S. 488, 495-96 (1974)).  A prisoner's
transfer from one institution to another generally moots his claims for injunctive
relief because he is no longer subject to the conditions he alleges are
unconstitutional.  Abdul-Akbar v. Watson, 4 F.3d 195, 206-07 (3d Cir. 1993); see also
Weaver v. Wilcox, 650 F.2d 22, 27 (3d Cir. 1981) ("[A] prisoner lacks standing to seek
injunctive relief if he is no longer subject to the alleged conditions he attempts to
challenge.").
    Banks was transferred out of FPC/USP-Canaan on August 7, 2006 and is
currently incarcerated at the Federal Correctional Institution in Yazoo City,
Mississippi.  (See Doc. 54-2 ¶ 3.)  Consequently, Banks is no longer subject to the
conditions he alleges are unconstitutional, and his claim for injunctive relief will be
dismissed as moot.  See Fortes v. Harding, 19 F. Supp. 2d 323, 326 (M.D. Pa. 1998)
("Fortes' transfer to another institution moots any claims for injunctive or
declaratory relief.").  However, the court recognizes that Banks' transfer does not
moot his claims for damages.  See Muslim v. Frame, 854 F. Supp. 1215, 1222 (E.D.
Pa. 1994) (stating that "an alleviation of an alleged unconstitutional condition does
not moot a prisoner's claim for actual and punitive damages").

and stamps.  (Id. ¶¶ 27, 30.)  He alleges that he needed each of these items because he was a litigant in at least four pending cases during the time he was incarcerated in the SHU.  Banks claims that his requests were not answered for weeks, if at all, while other inmates confined in the SHU were granted similar requests.  (Id. ¶ 27.)  Banks also claims that on the morning of April 19, 2006, a corrections officer informed him that he would be permitted to visit the law library later that day.  However, that promise did not come to fruition because no prison personnel ever arrived to escort him to the library.[5]  (Id. ¶¶ 28-29.)  As a result of this pattern of denials, Banks purportedly missed multiple deadlines in his sundry court cases.  (Id. ¶ 33.)[6]

Banks also claims that he was subjected to unfavorable conditions while in the SHU.  Specifically, he alleges that he was denied his one hour of daily recreation time and that his cell was filled with "mites and must" which caused him to "cough[] chronically choking on his own vomit and gagging."  (Id. ¶ 27.)  At some point, Banks allegedly became unable to breath, so he "slammed his stomach and back onto his bunkbed" to "force air into his poisoned lungs."  (Id.)  This caused injuries to his back and torso for which he allegedly requested but did not receive medical care.  (Id.)

---

[5]  Banks alleges without reference to specific facts that defendants FPC/USP-Canaan Special Housing Unit Shift Commanders Bender and Hess were involved the denial of his access to the law library.  (Doc. 38 ¶ 31.)

[6]  Banks alleges that defendants' repeated denials of his access to the courts give rise to both Bivens and FTCA claims.  (See Doc. 38 ¶¶ 33, 37.)

Banks further claims that defendant BOP Director Harley Lappin ("Lappin") established a "*de facto* policy" to punish inmates who file or attempt to file grievances.  (Id. ¶ 9.)  Pursuant to this policy, Lappin allegedly instructed defendants Case Manager Marc Renda ("Renda"), Counselor Art Roberts ("Roberts"), Camp Administrator Julie Nicklin ("Nicklin"), and FPC/USP-Canaan Warden Cameron Lindsey ("Lindsey") to "curtail Banks' access to the courts by obstructing the remedy process and stamps, telephone and mail."  (Id.)  Defendants also allegedly committed the following retaliatory acts:  (1) "throwing [Banks] from the camp into the [SHU]," (2) "denying Banks religious materials,"[7] (3) subjecting Banks to "racial and religious discrimination," (4) "concocting lies" to transfer Banks "from a lower to a higher security status," (5) employing "an inmate police force to spy on inmates and violate their constitutional rights," (6) "obstruct[ing] the

---

[7] Banks' claim of denial of access to religious materials has been previously litigated before this court.  See Banks v. The Multi-Million Dollar Mistakes of Julie Nicklin, No. 1:06-CV-1549, 2007 WL 2845045, at *4-6 (M.D. Pa. Sept. 20, 2007).  In that case, the court found that Banks had failed to exhaust his administrative remedies with respect to his claim of denial of access to religious materials and had not set forth an adequate basis to excuse his lack of exhaustion.  Id.  Accordingly, the court granted summary judgment in favor of defendants.  Id.  The record in the instant action reflects no further exhaustion attempts by Banks.  Therefore, the court will enter judgment in favor of defendants with respect to this claim without further discussion.

6

outgoing mail process," and (7) denying him access to a job with compensation.[8]

(Id. ¶¶ 5, 8-9.)

Finally, Banks claims that, on May 29, 2006, he was "literally seized" into a

meeting with Renda, Roberts, and Nicklin to discuss a grievance he had filed with

respect to stamps for legal mail.  (Id. ¶¶ 3-4.)  At the meeting, Renda, Roberts, and

Nicklin allegedly "pressured him under duress" to withdraw his grievance and

offered to provide him stamps if he complied.  (Id. ¶ 5.)  Banks "reluctantly agreed"

but was still denied stamps and placed in the SHU.  (Id.)  In addition, Banks was

later reprimanded for using stamps he received from another inmate.  (Id. ¶ 6.)[9]

## II.   **Standards of Review**

### A.   **Motion to Dismiss**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the

dismissal of complaints that fail to state a claim upon which relief can be granted.

FED. R. CIV. P. 12(b)(6).  When ruling on a motion to dismiss under Rule 12(b)(6), the

court must "accept as true all [factual] allegations in the complaint and all

---

[8] Banks' claim regarding his prison work status has been previously decided by this court and affirmed by the United States Court of Appeals for the Third Circuit.  See Banks v. Roberts, No. 1:06-CV-1232, 2007 WL 1574771 (M.D. Pa. May 31, 2007); Banks v. Roberts, No. 07-2793, 251 F. App'x 774, 776 (3d Cir. 2007).  In Banks v. Roberts, this court dismissed Banks' claims for failure to exhaust.  Because the record reveals no exhaustion attempts that the court failed to consider in rendering its previous decision, the court will enter judgment in favor of defendants with respect to this claim without further discussion.

[9] Banks alleges that defendants' retaliatory actions and conduct during and after the May 29, 2006 meeting give rise to Bivens, FTCA, and § 1985 conspiracy claims.  (See Doc. 38 ¶¶ 13, 16, 19, 24.)

7

reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007) (quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)).  Although the court is generally limited in its review to the facts in the complaint, it "may also consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994); see also In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

Federal notice pleading rules require the complaint to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Sershen v. Cholish, No. 3:07-CV-1011, 2007 WL 3146357, at *4 (M.D. Pa. Oct. 26, 2007) (quoting Erickson v. Pardus, ___ U.S. ___, 127 S. Ct. 2197, 2200 (2007)).  The plaintiff must present facts that, if true, demonstrate a plausible right to relief.  See FED. R. CIV. P. 8(a) (stating that the complaint should include "a short and plain statement of the claim showing that the pleader is entitled to relief"); Bell Atl. Corp. v. Twombly, ___ U.S. ___, 127 S. Ct. 1955, 1965 (2007) (requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level"); Victaulic Co. v. Tieman, 499 F.3d 227, 234 (3d Cir. 2007).  Thus, courts should not dismiss a complaint for failure to state a claim if it "contain[s] either direct or inferential allegations respecting all the material elements necessary to sustain recovery under *some* viable legal theory." Montville Twp. v. Woodmont Builders LLC, No. 05-4888, 2007 WL 2261567, at *2 (3d Cir. 2007) (quoting Twombly, ___ U.S. at ___, 127 S. Ct. at 1969).  Under this

8

liberal pleading standard, courts should generally grant plaintiffs leave to amend

their claims before dismissing a complaint that is merely deficient.  See Grayson v.

Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Shane, 213 F.3d at 116-17.

### B.    Motion for Summary Judgment

Through summary adjudication the court may dispose of those claims that do

not present a "genuine issue as to any material fact" and for which a jury trial

would be an empty and unnecessary formality.  See FED. R. CIV. P. 56(c).  It places

the burden on the non-moving party to come forth with "affirmative evidence,

beyond the allegations of the pleadings," in support of its right to relief.  Pappas v.

City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); FED. R. CIV. P. 56(e); see

also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  This evidence must be

adequate, as a matter of law, to sustain a judgment in favor of the non-moving party

on the claims.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-57 (1986);

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986); see

also FED. R. CIV. P. 56(c), (e).  Only if this threshold is met may the cause of action

proceed.  Pappas, 331 F. Supp. 2d at 315.

## III.   Discussion

Banks asserts Bivens, FTCA, and § 1985 conspiracy claims against all

defendants.  Defendants assert that Banks failed to exhaust his administrative

remedies with respect to all of his claims.  In the alternative, defendants argue that,

even if Banks had properly exhausted, his Bivens and § 1985 claims would still fail

on the merits.  The court will address defendants' exhaustion arguments before

turning to the merits of Banks' Bivens and § 1985 claims.

### A.   Exhaustion of Administrative Remedies

Defendants seek entry of judgment in their favor because Banks failed to

exhaust his administrative remedies.[10]  The Prison Litigation Reform Act of 1995

("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (1996), requires prisoners to present

their claims through an administrative grievance process before seeking redress in

federal court.  The Act specifically provides as follows:

> No action shall be brought with respect to prison conditions under
> section 1983 of this title, or any other Federal law, by a prisoner
> confined in any jail, prison, or other correctional facility until such
> administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).  A prisoner must comply with the PLRA exhaustion

requirement as to *any* claim that arises in the prison setting, regardless of the

nature of the claim or of the relief sought.  See Porter v. Nussle, 534 U.S. 516, 532

(2002) ("[T]he PLRA's exhaustion requirement applies to all inmate suits about

prison life, whether they involve general circumstances or particular episodes, and

whether they allege excessive force or some other wrong."); Booth v. Churner, 532

U.S. 731, 741 n.6 (2001) ("[A]n inmate must exhaust irrespective of the forms of

relief sought and offered through administrative avenues.").  "[I]t is beyond the

power of [any] court . . . to excuse compliance with the exhaustion requirement."

---

[10]  Failure to exhaust is an affirmative defense for which defendants bear the
burden of proof.  Ray v. Kertes, 285 F.3d 287, 295 (3d Cir. 2002).

Nyhuis v. Reno, 204 F.3d 65, 73 (3d Cir. 2000).  Accordingly, the PLRA exhaustion

requirement applies to each of Banks' claims.

The FTCA adds an additional level of review that must be complied with

before a claim is considered properly exhausted.  Before a plaintiff may assert an

FTCA claim in federal court, he or she must have "presented the claim to the

appropriate Federal agency and his [or her] claim shall have been finally denied by

the agency in writing and sent by certified or registered mail."  28 U.S.C. § 2675.

Because PLRA exhaustion applies to each of Banks' claims, the court will discuss it

before turning to the additional exhaustion requirements of the FTCA.

### 1.    **PLRA Exhaustion**

The PLRA mandates that a prisoner "properly" exhaust his or her

administrative remedies before commencing suit in federal court.  Woodford v. Ngo,

548 U.S. 81, 93 (2006).  "Proper exhaustion demands compliance with an agency's

deadlines and other critical procedural rules because no adjudicative system can

function effectively without imposing some orderly structure on the course of its

proceedings."  Id. at 90.  Such requirements "eliminate unwarranted federal-court

interference with the administration of prisons, and thus seek[] to 'affor[d]

corrections officials time and opportunity to address complaints internally before

allowing the initiation of a federal case.'"  Id. at 93 (quoting Porter, 534 U.S. at 525).

Failure to comply with procedural requirements of the applicable prison's

grievance system will result in a procedural default of the claim.  Spruill v. Gillis,

372 F.3d 218, 227-32 (3d Cir. 2004) ("[P]rison grievance procedures supply the

11

yardstick for measuring procedural default."). Procedural default is a question of law. Id. at 232. A procedural default, "either through late or improper filings, bars the prisoner from bringing a claim in federal court unless equitable considerations warrant review of the claim." Gallego v. United States, No. 02-1157, 2005 WL 1653166, at *2 (M.D. Pa. July 8, 2005).

The exhaustion procedure to be utilized by federal inmates like Banks is the administrative remedy protocol established by the BOP and set forth at 28 C.F.R. §§ 542.10 - 542.19. Pursuant to this protocol, an inmate must first present his complaint to a staff member, who must attempt to informally resolve the issues asserted before the inmate files a request for administrative relief. Id. § 542.13(a). If informal resolution fails, the inmate may raise his complaint with the warden of the institution where he is confined. Id. § 542.14(a). If dissatisfied with the response, he may then appeal an adverse decision to the regional and the central offices of the BOP. Id. §§ 542.15(a), 542.18. No administrative appeal is considered finally exhausted until a decision is reached on the merits by the BOP central office. Id. § 542.15.

The BOP maintains a computerized index of all inmate grievances and appeals. This indexing system is referred to as SENTRY. See Gallego, 2005 WL 1653166, at *2. Relevant SENTRY records indicate that Banks filed twenty-four requests for administrative remedy while incarcerated at FPC/USP-Canaan.

(Doc. 55 ¶ 9; see also Doc. 54-2 ¶ 7; Doc. 54-2 at 6-19, 23-43.)[11]  The requests range in

date from May 26, 2006 to August 3, 2006 and address numerous alleged deficiencies

in prison conditions.  (See Doc. 54-2 at 8-19.)  Banks filed regional-level appeals with

respect to five of his grievances.  These appeals were filed on July 5, July 7, July 21,

July 25, and August 3, 2006.  (Doc. 54-2 at 24-34; see also Doc. 55 ¶ 27.)  Banks did

not file any appeals to the BOP central office during the relevant period.  (Doc. 54-2

at 24-34.)

　　Of Banks' twenty-four requests for administrative remedy, only five

tangentially relate to claims he asserts in the instant ligation.[12]  Banks failed to

appeal any of these grievances to the regional or central office levels.  (Id.)

Accordingly, defendants contend that Banks procedurally defaulted his claims by

_____

[11]  Defendants have submitted two declarations from L. Cunningham, a
supervisory attorney at the United States Penitentiary at Lewisburg, Pennsylvania,
which verify the accuracy of the SENTRY records.  (See Doc. 54-2 at 3-5, 20-22.)

[12]  The five complaints relate to Banks' claims that he was:  (1) denied access
to stamps for his legal mail, (2) placed in a cell filled with mites and must, (3) denied
medical care for his back injuries, (4) refused access to the telephone, and (5) denied
admission to the law library.  The details of the five complaints are as follows:
　　On May 26 and June 23, 2006, Banks filed two separate complaints regarding
his requests for stamps.  (Doc. 54-2 at 8, 10; Doc. 55 ¶¶ 10, 12.)  Banks alleges that he
"reluctantly" withdrew the first complaint following the May 29, 2006 meeting.
(Doc. 38 ¶ 5.)  Banks did not withdraw the second complaint, and it was denied on
July 10, 2006.  (Doc. 55 ¶ 13.)  On June 27, 2006, Banks filed a complaint claiming
that the SHU shower drains were not functioning and were a health concern.  (Id.
at 11; Doc. 55 ¶ 14.)  This complaint was denied on July 10, 2006.  (Doc. 54-2 at 11;
Doc. 55 ¶¶ 14-15.)  On July 19, 2006, Banks filed a complaint seeking an x-ray of his
back, which was granted on August 1, 2006.  (Doc. 54-2 at 15.)  On July 20, 2006,
Banks filed a complaint requesting access to a telephone book and to the law
library, which was denied on August 3, 2006.  (Id. at 33.)

failing to file grievances regarding the majority of his claims[13] and by failing to

appeal the remainder to the regional and central office levels.  Banks concedes that

he failed to file and/or appeal a number of his grievances, but argues that his failure

should be excused because no administrative remedies were "available"[14] to him at

the time of the filing deadlines.  See 42 U.S.C. § 1997e(a); Camp v. Brennan, 219

F.3d 279, 281 (3d Cir. 2000) (asserting that under the PLRA, a prisoner need only

exhaust such administrative remedies as are "available"); Brown v. Croak, 312 F.3d

109, 111 (3d Cir. 2002) (same).  Banks argues that no administrative remedies were

available to him because prison officials "obstructed the exhaustion process" and

---

[13]  None of Banks' twenty-four grievances relate to his claims that FPC/USP-Canaan officials: (1) denied him one hour of daily recreation time while he was in the SHU, (2) denied him access to legal materials, (3) placed him in the SHU in retaliation for filing grievances pursuant to a "*de facto* policy," (4) discriminated against him on the basis of race and religion, (5) used confidential informants, (6) mishandled his legal and personal mail, (7) adjusted his security classification by "concocting lies," (8) denied him access to the addresses of several parties to his outstanding lawsuits, (9) reprimanded him for receiving stamps from other inmates, and (10) "seized" him into a meeting on May 29, 2006.  See supra Part I at 4-7; (see also Doc. 54-2 at 7-19.)

[14]  The "availability of administrative remedies to a prisoner is a question of law."  Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003); see also Oliver v. Moore, 145 F. App'x 731, 734.

"refused to provide [him] with remedies" while he was in the SHU.[15]  (Doc. 57 at 1.)

Banks further avers that any complaints logged into the SENTRY system and

answered by FPC/USP-Canaan officials related to requests that he had made *before*

he entered the SHU.  (Id.)

Courts have invariably held that affirmative misconduct by prison officials –

designed to impede or prevent an inmate's attempts to exhaust – may render

administrative remedies unavailable.  See Todd v. Benning, 173 F. App'x 980, 982-

83 (3d Cir. 2006) (expressing approval of Eighth Circuit's holding in Miller v. Norris,

247 F.3d 736 (8th Cir. 2001) that administrative remedies were not available where

prison officials "purportedly prevented prisoner from employing the prison's

grievance system").  Examples of affirmative misconduct on the part of prison

officials include:  (1) threatening a prisoner in an attempt to thwart the prisoner's

---

[15]  Specifically, Banks states:

> Banks has consistently stated that Defendants obstructed the exhaustion process on these claims by not providing him with remedies once they lodged him in the SHU. . . .  Since Defendants refused to provide Banks with remedies to continue the exhaustion process and because the reason Banks was lodged into the SHU was because Defendants sought to obstruct the remedie [sic] process Banks has shown that he has exhausted all of his available remedies in this action.  Defendants cannot explain how Banks may exhaust remedies that they refused to provide him with once he was lodged in the SHU.
>
> . . .
>
> Banks had attempted to use [the] administrative grievance procedure as claimed, but received no remedies once he was in the SHU or responses to his request [sic] for remedies, as required by 42 U.S.C. § 1997e.

(Doc. 57 at 1-2.)

attempts to exhaust, see, e.g., Harcum v. Shaffer, No. 06-5326, 2007 WL 4167161, at
*5 (E.D. Pa. Nov. 21, 2007) (finding administrative remedies unavailable where
prison officials threatened plaintiff with "opposition to his future prerelease
application, parole, or outside work detail if he did not withdraw his grievance"),
(2) refusing to provide appropriate grievance forms in response to inmate inquiries,
see, e.g., Mitchell, 318 F.3d at 529, (3) advising an inmate that his or her situation
does not require a grievance, see, e.g., Brown, 312 F.3d at 111 (finding that
administrative remedies were unavailable to plaintiff who had been advised by
prison official that he must wait until the end of the prison's investigation before
filing a grievance), and (4) failing to file or respond to a prisoner's grievances, see,
e.g., Camp, 219 F.3d at 280-81 (finding that administrative remedies were
unavailable where prison officials refused to file plaintiff's grievances regarding
their coworkers).  While Banks does not identify the exact type of affirmative
misconduct involved here, he clearly alleges that defendants engaged in conduct
that was designed to impede or prevent his attempts to exhaust.  See Todd, 173 F.
App'x at 982-83.  He repeatedly states that defendants "obstructed" the grievance
procedure and "refused" to provide him with the materials needed to complete the
exhaustion process.  (See Doc. 57 at 1-2.)  Accordingly, the court finds that Banks
has set forth a compelling reason to excuse compliance with the exhaustion
requirement for a number of his claims.

    The court notes, however, that the grievance process apparently became
available to Banks on May 26, 2006, the day that he filed the first of his twenty-four

grievances.  BOP protocol provides an inmate twenty calendar days from the date

on which the basis for a remedy request occurred to initiate that remedy request

with the warden of the institution where the inmate is confined.  28 C.F.R. § 542.14;

see also Jetter v. Beard, 183 F. App'x 178, 180 (3d Cir. 2006) (finding procedural

default where prisoner failed to timely file his initial grievance).  Subtracting the

twenty day exhaustion period from the date that the grievance process apparently

became available to Banks results in a date of May 6, 2006.  The court finds that, to

the extent that any of Banks' claims accrued on or after May 6, 2006, his failure to

exhaust is not excused because the administrative grievance process became

available to him within the twenty day period dictated by the PLRA.  While Banks'

amended complaint is largely devoid of allegations of temporality, the claims that

accrued during or after the May 29, 2006 meeting[16] clearly fall within the post-

May 6, 2006 period for which all claims are procedurally defaulted.  Accordingly, the

court will grant defendants' motion with respect to these claims.  See Spruill, 372

F.3d at 227-32.  Because the record is currently devoid of evidence regarding the

---

[16]  Specifically, these claims are that defendants "seized" Banks into the
meeting and reprimanded him for utilizing stamps provided by a fellow inmate.
See supra Part I at 5-6.

temporality of Banks' remaining claims, the court must deny defendants' motion with respect to these claims.[17]

### 2.   **FTCA Exhaustion**[18]

Turning to Banks' FTCA claims, defendants contend that the claims should be dismissed because Banks has not fulfilled the additional exhaustion requirements mandated by the FTCA. After a careful review of the record, the court agrees.

The FTCA confers on district courts subject matter jurisdiction over negligence actions against the United States. See 28 U.S.C. § 1346(b)(1) ("[D]istrict courts . . . shall have exclusive jurisdiction of civil actions on claims against the United States . . . caused by the negligent or wrongful act or omission of any

---

[17] Moreover, Banks' claim that he was denied access to the grievance process is limited to the time he spent in the SHU. Neither party specifically identifies the date of Banks' return to general population. Were defendants able to establish that Banks was not housed in the SHU at the time that any of his claims accrued, Banks' failure to exhaust those claims would not be excused. Because Banks' confinement history is not included in the current record, the court cannot make such a finding in the context of the instant motion.

[18] The court notes that a claim filed pursuant to the FTCA must be brought against the United States itself, rather than against its agents or employees. 28 U.S.C. § 2679(b)(1); see also Banks v. Roberts, 251 F. App'x 774, 777 (3d Cir. 2007); Durosky v. United States, No. 07-1828, 2008 WL 521204, at *1 (M.D. Pa. Feb. 27, 2008). Hence, with the exception of the United States, defendants cannot be held liable under the FTCA. In the interest of justice to this *pro se* litigant, see Haines v. Kerner, 404 U.S. 519, 520-21 (1972), the court will construe his negligence claims against all defendants as claims brought against the United States pursuant to the FTCA. See Martinez v. United States Post Office, 875 F. Supp. 1067, 1074 (D.N.J. 1995) ("The United States is the only proper defendant in a suit for personal injuries arising of the negligence of Federal employees.").

employee of the Government while acting within the scope of his office or

employment . . . .").  The FTCA applies to claims alleging personal injuries

occasioned by the negligence of government employees.  Id.; Dolan v. U.S. Postal

Service, 546 U.S. 481, 484-85 (2006).  However, a prerequisite to filing an FTCA

action is exhaustion of the administrative remedies available, which requires an

FTCA plaintiff to first present his claim in writing to the appropriate federal agency

as an administrative tort claim.  28 U.S.C. § 2675(a).  The statute of limitations for

submitting an administrative tort claim to the agency is two years.  Id. § 2401(b).

The plaintiff may sue in federal court only after receiving a "final denial" by the

agency.  Id. § 2675(a).  The requirement of receiving a "final denial" by the

administrative agency on an FTCA claim "is jurisdictional and cannot be waived."

Bialowes v. United States, 443 F.2d 1047, 1049 (3d Cir. 1971).  The purpose of the

"exhaustion requirement is [. . .] to provide notice to the agency so that it can

investigate the claim," Barnes v. United States, 137 F. App'x 184, 188 (10th

Cir. 2005), and to enable the agency "to resolve claims informally without burdening

the courts with unnecessary litigation," Bansal v. Russ, 513 F. Supp. 2d 264, 286

(E.D. Pa. 2007).

While incarcerated at FPC/USP-Canaan, Banks filed three administrative

FTCA claims.  (Doc. 55 ¶ 29.)  Only one is relevant to the instant action.[19]  On

June 14, 2006, Banks filed a claim numbered TRT-NER-2006-04679, in which he

complains about the BOP policy regarding the number of stamps given to indigent

inmates at FPC/USP-Canaan and other federal facilities.  (Doc. 54-2 at 36-37; Doc.

55 ¶ 30.)  The BOP rejected this claim on September 8, 2006, because Banks had not

"described, with specificity, any personal injury, nor loss/damage to personal

property."  (Doc. 54-2 at 36; Doc. 55 ¶ 33.)  As a result, Banks was informed that his

claim was being returned to him for either correction and resubmission or for

withdrawal.  (Doc. 54-2 at 36.)  Banks took no further action with respect to this

claim.  (Doc. 55 ¶ 34.)

Banks has not received a "final denial" from an administrative agency with

respect to this claim.  See 28 U.S.C. § 2675(a).  He was told to resubmit the claim

---

[19]  On June 18, 2006, Banks filed claim number TRT-NER-2006-04309, complaining about the pay he received for his prison work assignment.  (Doc. 54-2 at 41; Doc. 55 ¶ 35.)  This court disposed of an FTCA cause of action arising from the filing of this claim in Banks v. Roberts, No. 1:06-CV-1232, 2007 WL 1574771 (M.D. Pa. May 31, 2007).  In that case, the court denied Banks' FTCA cause of action because Banks had failed to satisfy the additional exhaustion requirements of the FTCA.  Id. at *7-9.  The Third Circuit affirmed this decision.  See Banks v. Roberts, No. 07-2793, 251 F. App'x 774, 776-77 (3d Cir. 2007).  Banks has undertaken no additional efforts to exhaust his administrative remedies since the court rendered its decision in Roberts.  Accordingly, the court will not consider this claim in disposing of the instant case.

On August 8, 2006, Banks filed claim number TRT-NER-2007-00167, seeking compensation for personal injury he allegedly suffered at FPC/USP-Canaan from July 13, 2006 through July 24, 2006.  (Doc. 54-2 at 22.)  This claim is of no moment to the instant action because it relates to incidents that occurred outside of the relevant time period of April and May 2006.

and elected to take no action.  Moreover, Banks failed to initiate the exhaustion

process with respect to the additional FTCA claims contained in the instant

complaint.  These failures are jurisdictional, and the court is not permitted to

excuse them.  See Bialowes, 443 F.2d at 1049.  Accordingly, the court will grant

defendants' motion for summary judgment with respect to Banks' FTCA claims.

### B.    The Merits of Banks' *Bivens* Claims

"A Bivens action, which is the federal equivalent of the § 1983 cause of action

against state actors, will lie where the defendant has violated the plaintiff's rights

under the color of federal law."[20]  Brown v. Philip Morris, 250 F.3d 789, 800 (3d Cir.

2001); see also Egervary v. Young, 366 F.3d 238, 246 (3d Cir. 2004).  "[C]ourts have

generally relied upon the principles developed in the case law applying section 1983

_____

[20]  Defendants apparently concede for purposes of the instant motion that they were acting under color of federal law at all times relevant hereto.  The individual defendants contend, however, that Banks has failed to allege that they were personally involved in any of the purported constitutional violations.  See Harper v. Beard, No. 2:05-CV-01803-LDD, 2007 WL 4242214, at *7 n.20 (E.D. Pa. Nov. 28, 2007) ("Personal involvement is necessary to sustain a cause of action under Bivens . . . ." (citing Balter v. United States, 172 F. App'x 401, 403 (3d Cir. 2006), Richards v. Pennsylvania, 196 F. App'x 82, 85 (3d Cir. 2006), and Ruiz Rivera v. Riley, 209 F.3d 24, 28 (1st Cir. 2000))); (see also Doc. 58 at 12-13.)  Nevertheless, the court finds that Banks has sufficiently alleged each defendant's personal involvement to satisfy this threshold inquiry.  (See, e.g., Doc. 38 ¶ 9 (alleging that defendants Lappin, Roberts, Nicklin, Lindsey, and Renda violated his Fourth Amendment right against unlawful searches and his First Amendment right to access the courts); id. ¶ 31 (alleging that defendants Bender and Hess violated his First Amendment right to access the courts and his Eight Amendment right against cruel and unusual punishment)).  Accordingly, the court will deny defendants' motion to dismiss on this ground without further discussion.

to establish the outer perimeters of a <u>Bivens</u> claim against federal officials." <u>Schrob</u> <u>v. Catterson</u>, 948 F.2d 1402, 1409 (3d Cir. 1991).

In the instant case, Banks' <u>Bivens</u> claims are premised upon violations of his First, Fourth, Fifth, and Eighth Amendment rights.  Defendants allege that none of Banks' claims rises to the level of a constitutional violation and that, even if a constitutional violation occurred, defendants are entitled to qualified immunity.[21] The court will discuss Banks' constitutional claims *seriatim* before applying the doctrine of qualified immunity.

---

[21]  Defendants also allege that all claims against defendant Lappin should be dismissed insofar as he is named in the complaint solely because of his position as the director of the BOP.  It is well-established that personal liability in a civil rights action cannot be imposed upon a governmental official based on a theory of *respondeat superior*.  <u>See</u> <u>Rizzo v. Goode</u>, 423 U.S. 362, 372-73 (1976); <u>Hampton v.</u> <u>Holmesburg Prison Officials</u>, 546 F.2d 1077, 1082 (3d Cir. 1976).  Furthermore, each named defendant must be shown, through the complaint's allegations, to have been personally involved in the events or occurrences upon which the plaintiff's claims are based.  <u>Rode v. Dellarciprete</u>, 845 F.2d 1195, 1207 (3d Cir. 1998).  As explained in <u>Rode</u>,

> Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence.  Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.

<u>Id</u>. (citations omitted).  In the instant case, Banks alleges that Lappin personally created a *de facto* policy of retaliation.  (Doc. 38 ¶ 9.)  In the restricted posture of a Rule 12(b) motion to dismiss, the court finds that this allegation is sufficient to survive the personal involvement hurdle, and the court will deny the motion to dismiss with respect to defendants' *respondeat superior* argument.

### 1.    First Amendment Retaliation

In order to establish a retaliation claim under the First Amendment, a plaintiff must prove:  (1) conduct or speech protected by the First Amendment; (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his First Amendment rights; and (3) a causal link between the constitutionally protected conduct or speech and the retaliatory action.  Thomas v. Independence Twp., 463 F.3d 285, 296 (2006); see also, e.g., Eichenlaub v. Twp. of Indiana, 385 F.3d 274, 282 (3d Cir. 2004); Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001).  Defendants argue that Banks has failed to assert a protected activity sufficient to trigger First Amendment protections.  (See Doc. 54 at 19.)  However, to the extent that Banks' retaliation claim is premised on his filing of inmate grievances, Banks has clearly alleged that he engaged in a protected activity.  See Thomas v. SCI-Dallas, No. 06-1839, 2007 WL 2319805, at *4 (M.D. Pa. Aug. 13, 2007) ("Plaintiff's filing a prisoner grievance clearly falls within the ambit of the First Amendment's protections."); see also Robinson v. Taylor, No. 05-4492, 2006 WL 3203900 (3d Cir. Nov. 7, 2006) (same); Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003) (same).  Accordingly, the court will deny defendants' motion to dismiss with respect to this claim.

### 2.    First Amendment Access to Courts

"[P]risoners have a constitutional right of access to the courts."  Bounds v. Smith, 430 U.S. 817, 821 (1977).  In order to state a claim for denial of this right, a prisoner must plead that he or she has suffered an "actual injury" arising from the

23

challenged conduct of the defendants.  See Lewis v. Casey, 518 U.S. 343, 349-50

(1996).  Defendants argue that Banks has alleged no such injury in the instant case.

However, Banks clearly avers that he missed multiple deadlines in his sundry court

cases as a result of defendants' actions.  (See Doc. 38 ¶ 33); see also Allebach v.

Sherrer, No. 04-287, 2005 WL 1793726, at *5 (D.N.J. July 27, 2005) (citing Roman v.

Jeffes, 904 F.2d 192, 198 (3d Cir. 1990) (deeming an allegation of missed court-

imposed deadlines sufficient to satisfy the actual injury requirement)).  Accordingly,

the court will deny defendants' motion to dismiss with respect to this claim.

### 3.   **Fourth Amendment Unlawful Search**

Unlawful search claims require proof of an unconstitutional invasion of a

plaintiff's "reasonable expectation of privacy" or a deprivation of his or her interest

in property.  See Soldal v. Cook County, 506 U.S. 56, 62-64 (1992); Rakas v. Illinois,

439 U.S. 128, 133-35 (1978) (citing Alderman v. United States, 394 U.S. 165, 174

(1969)).  In the prison setting, an inmate's reasonable expectation of privacy

"necessarily is of diminished scope."  See United States v. Solomon, No. 05-385,

2007 WL 1099097, at *3 (W.D. Pa. 2007) (citing Bell v. Wolfish, 441 U.S. 520, 557

(1979)).

In the instant case, Banks alleges that his expectation of privacy was

infringed upon when defendants read his legal and personal mail.  Longstanding

Supreme Court precedent holds that the Fourth Amendment is not violated when

letters containing incriminating material are intercepted by prison personnel

pursuant to an "established practice, reasonably designed to promote the discipline

24

of the institution." <u>See</u> <u>Stroud v. United States</u>, 251 U.S. 15, 21-22 (1919).  Building

upon this precedent, numerous circuit courts have held that prison officials do not

violate an inmate's Fourth Amendment rights when they inspect an inmate's mail.

<u>See</u> <u>Bates v. MHM Correctional Servs.</u>, No. 05-2285, 2008 WL 396225, at *5 (M.D. Pa.

Feb. 11, 2008) (citing <u>Stow v. Grimaldi</u>, 993 F.2d 1002, 1004-05 (1st Cir. 1993)

(holding that a prison practice of requiring non-privileged outgoing mail to be

submitted for inspection in unsealed envelopes did not violate prisoners'

constitutional rights); <u>Smith v. Delo</u>, 995 F.2d 827, 830 (8th Cir. 1993) (stating that

prison officials are justified in screening outgoing nonlegal mail for escape plans,

contraband, threats, or evidence of illegal activity); <u>United States v. Whalen</u>, 940

F.2d 1027, 1034-35 (7th Cir.), <u>cert. denied</u>, 502 U.S. 951 (1991) (holding that because

prison officials are permitted to examine inmate mail to ensure that the mail does

not interfere with the orderly running of the prison, contain threats, or facilitate

criminal activity, there is no expectation of privacy in mail that inmates are

required to leave unsealed); <u>United States v. Kelton</u>, 791 F.2d 101, 103 (8th Cir.

1986) (stating that a prisoner's Fourth Amendment rights were not violated when

prison official inspected and copied prisoner's outgoing mail); <u>Smith v. Shimp</u>, 562

F.2d 423, 426-27 (7th Cir. 1977) (reasoning that when a pretrial detainee sends

non-privileged mail, he knowingly exposes same to possible inspection by jail

officials and consequently yields to reasonable search and seizure); <u>United States v.</u>

<u>Baumgarten</u>, 517 F.2d 1020, 1028 (8th Cir.), <u>cert. denied</u>, 423 U.S. 878 (1975) (holding

that, under circumstances where prisoner knew of official policy of reading

25

prisoners' outgoing and unsealed mail, prisoner cannot say the state gained access to contents of a letter by unlawful search and seizure)).  However, the aforementioned decisions turn on facts such as:  (1) the existence of an institutional policy informing inmates that their mail will be inspected, (2) whether the mail was nonlegal and/or non-privileged, (3) whether the mail was sealed or unsealed, and (4) whether the mail was incoming or outgoing.  Because these fact-intensive inquiries can influence whether a prisoner possesses a reasonable expectation of privacy in his or her mail, this issue is better suited for resolution in the context of a motion for summary judgment.  Accordingly, defendants' motion to dismiss will be denied with respect to this claim.

### 4.   Fifth Amendment Equal Protection

The Equal Protection Clause of the Fourteenth Amendment requires all persons "similarly situated" to be treated alike by state actors.  See City of Cleburne, Tex. v. Cleburne Living Center, 473 U.S. 432, 439 (1985).  While the Fifth Amendment does not contain an equal protection clause applicable to federal actors, the Fifth Amendment's Due Process Clause has been interpreted to contain an equal protection element, which proscribes racial discrimination to the same extent as the Fourteenth Amendment's Equal Protection Clause.  See Washington v. Davis, 426 U.S. 229, 239 (1976).  Therefore, the court will analyze Banks' Fifth Amendment equal protection claim by utilizing the analytical framework established under the Fourteenth Amendment.

To state an equal protection claim, a plaintiff must allege that:  (1) he or she was a member of a protected class, (2) he or she was treated differently from similarly situated persons outside of his or her protected class, and (3) the resultant discrimination was purposeful or intentional rather than incidental.  Id.; Tillman v. Lebanon County Corr. Facility, 221 F.3d 410, 423-24 (3d Cir. 2000).  Mere harassment based on protected-class status without identification of similarly situated individuals outside the class will not support an equal protection claim. See Hudson v. Coxon, 149 F. App'x 118, 121 (3d Cir. 2005) (upholding dismissal of equal protection claims for failure to allege differential treatment of others similarly situated); Pollack v. City of Phila., No. 06-4089, 2007 WL 576264, at *4 (E.D. Pa. Feb. 16, 2007) (dismissing plaintiff's equal protection claim despite his allegations of racial harassment because he failed to allege that he received treatment different from that given to other individuals).  When alleging the existence of individuals outside the protected class, a plaintiff "cannot use allegations . . . that amount to nothing more than 'conclusory, boilerplate language' to show that he may be entitled to relief," and  "bald assertion[s] that other[s] . . . were treated in a dissimilar manner" will not survive dismissal.  Young v. New Sewickley Twp., 160 F. App'x 236, 266 (3d Cir. 2006) (citing Evancho v. Fisher, 423 F.3d 347, 354-55 (3d Cir. 2005)).  Instead, the plaintiff must allege "occasions or circumstances" of differential treatment.  Young, 160 F. App'x at 266.

In the instant case, Banks contends that defendants' unconstitutional actions were motivated by his "class based status as an African-American and American

Indian citizen of Pennsylvania." (See Doc. 38 ¶ 16.)  Banks therefore alleges

membership in a protected class.  See Bradley v. United States, 299 F.3d 197, 206

(2002).  However, Banks fails to allege the existence of similarly situated individuals,

and merely states that defendants' actions were "done under racial and religious

discrimination since Banks is Black and Lakota Sioux Indian and his religion is

based on ancient Egypt." (Doc. 38 ¶ 9.)  These allegations are little more than "bald

assertions" and do not allege "occasions and circumstances" of differential

treatment.  Young v. New Sewickley Twp., 160 F. App'x 236, 266 (3d Cir. 2005).

Without alleging the existence of individuals outside of his protected class whom

defendants treated differently, Banks has not pleaded facts sufficient to allege a

protected-class equal protection claim.  See id.; Pollack, 2007 WL 576264, at *4.

Accordingly, the court will grant defendants' motion for summary judgment with

respect to this claim.  However, the court will grant Banks leave to file an amended

complaint with respect to this claim.  See Grayson, 293 F.3d at 108.

### 5.    Eighth Amendment Cruel and Unusual Punishment

The Eighth Amendment guarantees that individuals will not be subjected to

"cruel and unusual punishments."  U.S. CONST. amend. VIII.  In the prison setting,

this provision prohibits officials from acting with "deliberate indifference" towards

a "substantial risk of serious harm to an inmate."  Farmer v. Brennan, 511 U.S. 825,

828, 832-34 (1994).  In the action *sub judice*, Banks alleges that he was subjected to

cruel and unusual punishment in three forms.  First, he was denied access to

medical treatment for a back injury.  Second, his cell was inadequately ventilated.

Finally, he was denied daily recreation time outside of his SHU cell.

Turning first to the issue of a denial of medical care, a violation of the Eighth

Amendment is established by showing that a prison official acted with "deliberate

indifference" to the prisoner's "serious medical needs."  Estelle v. Gamble, 429 U.S.

97, 106 (1976); see also Spruill, 372 F.3d at 235.  A serious medical need is a

condition requiring treatment as diagnosed by a doctor or a condition "so obvious

that a lay person would easily recognize the necessity for a doctor's attention."

Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987).

A prison official acts with deliberate indifference when the official, *inter*

*alia*, "den[ies] reasonable requests for medical treatment . . . [which] exposes the

inmate to 'undue suffering or the threat of tangible residual injury.'"  Id.  In the

instant case, Banks alleges that he requested medical treatment for his back

injuries, but that the requested treatment was not received.  (See Doc. 38 ¶ 27.)

Because resolution of Banks' Eighth Amendment denial of medical care claim

requires the court to engage in a fact-intensive inquiry regarding the seriousness of

his condition and the mental state of the implicated prison officials, Banks' claim is

more appropriately reserved for summary judgment.  Accordingly, the court will

deny defendants' motion to dismiss with respect to this claim.

Banks also claims that while he was confined in the SHU, he was denied

recreation time and subjected to an unclean ventilation system that spread "mites

and must" throughout his cell."  (See Doc. 38 ¶ 27.)  Confinement in isolation cells,

such as the SHU, is "not per se violative of the Eighth Amendment."  See

Imprisoned Citizens Union v. Shapp, 451 F. Supp. 893, 897 (E.D. Pa. June 7, 1978)

(citing United States ex rel. Tyrrell v. Speaker, 471 F.2d 1197, 1202 (3d Cir. 1973)).

However, confinement in isolation cells that provide "inadequate space, heating,

ventilation, lighting or sanitary conditions . . . has been declared to be cruel and

unusual punishment."  Id.  In addition, courts have considered an inmate's "limited

opportunities for recreation" outside of his or her isolation cell as a factor in the

Eighth Amendment cruel and unusual punishment inquiry.  Tillery v. Owens, 907

F.2d 418, 427-28 (3d Cir. 1990).  The court finds Banks' allegations that his isolation

cell provided inadequate ventilation and that he was denied recreation time outside

of his cell sufficient to state a cruel and unusual punishment claim.  Accordingly,

the court will deny defendants' motion to dismiss with respect to this claim.

### 6.    **Qualified Immunity**

The doctrine of qualified immunity provides that government officials

performing "discretionary functions," are shielded from suit if their conduct did not

violate a "clearly established statutory or constitutional right[ ] of which a

reasonable person would have known."  Wilson v. Layne, 526 U.S. 603, 609 (1999);

Saucier v. Katz, 533 U.S. 194, 200-01 (2001).  This doctrine provides not only a

defense to liability, but "immunity from suit."  Hunter v. Bryant, 502 U.S. 224, 227

(1991); Mitchell v. Forsyth, 472 U.S. 511, 526 (1985).  To gain the protection of the

doctrine, the defendant must show either that:  (1) the plaintiff has not

demonstrated "a deprivation of an actual constitutional right," or (2) the right at

issue was not "clearly established at the time of the alleged violation." Conn v.
Gabbert, 526 U.S. 286, 290 (1999); see also Doe v. Groody, 361 F.3d 232, 237-38 (3d
Cir. 2004); accord Wright v. City of Phila., 409 F.3d 595, 600 (3d Cir. 2005) (noting
that six Courts of Appeals have ruled that the first step in qualified immunity
analysis is whether a constitutional violation has occurred). A right is clearly
established if "it would be clear to a reasonable [official] that his conduct was
unlawful in the situation he confronted." Saucier, 533 U.S. at 202.

In the instant case, Banks has failed to demonstrate a deprivation of his Fifth
Amendment right to equal protection. See supra Part III.B.3. Therefore, the
doctrine of qualified immunity shields defendants from liability for this claim.
However, Banks has demonstrated deprivations of his First, Fourth, and Eighth
Amendment rights sufficient to survive a motion to dismiss. See supra Parts
III.B.1-3, 5. To successfully assert a defense of qualified immunity with respect to
these claims, defendants would be required to prove that the aforementioned rights
were not "clearly established" at the time of the alleged violations. See Conn, 526
U.S. at 290. Given the fact-sensitive nature of the constitutional inquiries that
remain, see supra Parts III.B.1-3, 5, the court cannot determine at this preliminary
stage of the proceeding whether defendants are entitled to qualified immunity with
respect to Banks' remaining claims. Accordingly, the court will deny defendants'
motion to dismiss to the extent that it asserts a qualified immunity defense.

## C.    The Merits of Banks' § 1985 Conspiracy Claims

Banks alleges that defendants engaged in a conspiracy to violate his

constitutional rights in contravention of 42 U.S.C. § 1985.  Specifically, Banks claims

that defendant Lappin created a *de facto* policy which aims to punish inmates for

filing or attempting to file grievances.  Banks asserts that by following that policy,

all defendants "conspired together . . . to violate Banks' constitutional rights."

(Doc. 38 at 5.)

Section 1985(3) provides a cause of action against a person who conspires

"for the purpose of depriving, either directly or indirectly, any person or class of

persons of the equal protection of the laws, or of equal privileges and immunities

under the laws."  42 U.S.C. § 1985(3).[22]  To establish a *prima facie* case under

§ 1985(3), a plaintiff must allege:  "(1) a conspiracy; (2) motivated by a racial or class

based discriminatory animus designed to deprive, directly or indirectly, any person

or class of persons . . . [of] the equal protection of the laws; (3) an act in furtherance

of the conspiracy; and (4) an injury to person or property or the deprivation of any

right or privilege of a citizen of the United States."  Ridgewood Bridgeport. of Educ.

v. N.E. ex rel. M.E., 172 F.3d 238, 253-54 (3d Cir. 1999); see also Farber v. City of

Patterson, 440 F.3d 131, 134 (3d Cir. 2006); Griffin v. Breckenridge, 403 U.S. 88, 102-

---

[22] The complaint does not specify subsection (3) of § 1985.  However, the allegations of the complaint clearly do not implicate subsection (1), which involves preventing officers from performing duties, or subsection (2), which involves obstructing justice or intimidating a party, witness, or juror.  See 42 U.S.C. § 1985.

03 (1971); <u>Brown v. Philip Morris Inc.</u>, 250 F.3d 789, 805 (3d Cir. 2001); <u>Lake v. Arnold</u>, 112 F.3d 682, 685 (3d Cir. 1997).

In the matter *sub judice*, the complaint is devoid of allegations sufficient to state a § 1985 claim.  In order to state a cognizable § 1985 claim,

> [t]he plaintiff's allegations must be supported by facts bearing out the existence of the conspiracy and indicating its broad objectives and the role each defendant allegedly played in carrying out those objectives. Bare conclusory allegations of 'conspiracy' or 'concerted action' will not suffice to allege a conspiracy.  The plaintiff must expressly allege an agreement or make averments of communication, consultation, cooperation, or command from which such an agreement can be inferred.

<u>Flanagan v. Shively</u>, 783 F. Supp. 922, 928 (M.D. Pa. 1992).  The essence of a conspiracy is an agreement or concerted action between individuals.  <u>See</u> <u>D.R. by L.R. v. Middle Bucks Area Vocational Technical Sch.</u>, 972 F.2d 1364, 1377 (3d Cir. 1992).  Consequently, a plaintiff must allege with particularity and present material facts which show that the purported conspirators reached some understanding or agreement or plotted, planned and conspired together to deprive the plaintiff of a protected federal right.  <u>Rose v. Bartle</u>, 871 F.2d 331, 366 (3d Cir. 1989).  Where a civil rights conspiracy is alleged, there must be specific facts in the complaint which tend to show a meeting of the minds and some type of concerted action.  <u>Deck v. Leftridge</u>, 771 F.2d 1168, 1170 (8th Cir. 1985).  "[T]he factual basis need not be extensive, but it must be enough to avoid a finding that the suit is frivolous."  <u>Id.</u> (citations omitted).  A plaintiff cannot rely on subjective suspicions and unsupported speculation.  <u>Young v. Kann</u>, 926 F.2d 1396, 1405 n.16 (3d Cir. 1991).

In the instant case, viewing the amended complaint in the light most favorable to Banks, it is clear that Banks has failed to state a viable conspiracy claim against defendants.  Banks makes no averments of fact that support his claim that Lappin created a *de facto* policy of retaliation, let alone any averments that support his claim that all other defendants followed the policy in order to "punish" Banks.  Nor is there anything in the amended complaint that reasonably suggests the presence of an agreement or concerted activity between defendants to violate Banks' constitutional rights.  Banks' allegations of conspiracy are bare conclusions and unsupported speculations at best.  See Flanagan, 783 F. Supp. at 928.

Moreover, the complaint does not allege that "any 'racial or class based discriminatory animus'" motivated defendants' conduct.  See Cranbury Brook Farms v. Twp. of Cranbury, 226 F. App'x 92, 95 (3d Cir. 2007) (citing Lake v. Arnold, 112 F.3d 682, 685 (3d Cir. 1997)).  While Banks states in a conclusory fashion that defendants' actions were motivated by his "status as an African American and American Indian" and by his "Egyptian based religion" (Doc. 38 ¶ 16), his factual allegations regarding the alleged conspiracy indicate that defendants' actions were targeted toward all inmates "who file or attempt to file grievances."  (Id. ¶ 9.)  If the conspiratorial acts were not motivated by class-based animus, Banks' mere membership in a protected class is insufficient to give rise a § 1985 claim.

Having found that Banks has failed to allege the existence of a class-based conspiracy, the court will grant defendants' motion to dismiss with respect to Banks' § 1985 claims. However, the court will grant Banks leave to file an amended complaint with respect to this claim. <u>See</u> <u>Grayson</u>, 293 F.3d at 108.

## IV.   <u>Conclusion</u>

Viewing the evidence in the light most favorable to Banks, the court finds that Banks has adequately alleged that the grievance process was unavailable while he was housed in the SHU. The evidence of record also suggests that Banks was released from the SHU at some point during his period of incarceration at FPC/USP-Canaan and that the grievance process became available to him no later than May 26, 2006. This evidence suggests that Banks procedurally defaulted a number of his claims. Given the absence of temporality evidence in the current record, the court is only able to determine that Banks procedurally defaulted those claims that accrued during or after the May 29, 2006 meeting. The court will grant the motion for summary judgment with respect to these claims, but must deny it with respect to the remaining claims. Moreover, Banks has failed to satisfy the additional exhaustion requirements of the FTCA; therefore, the court will grant defendants' motion for summary judgment with respect to these claims.

Turning to the merits of Banks' claims, the court finds that Banks' allegations are sufficient to state <u>Bivens</u> claims for violations of the First, Fourth, and Eighth Amendments. However, his allegations are insufficient to establish a Fifth Amendment violation. Finally, the court will dismiss Banks' § 1985 claims for

35

failure to allege the existence of a class-based conspiracy.  Leave to amend will be

granted, as noted.

      An appropriate order will issue.


                                 _S/ Christopher C. Conner_____
                                 CHRISTOPHER C. CONNER
                                 United States District Judge

Dated:       June 24, 2008

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **FREDERICK BANKS,** | : | **CIVIL ACTION NO. 1:06-CV-1127** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **ONE OR MORE UNKNOWN** | : | |
| **NAMED CONFIDENTIAL** | : | |
| **INFORMANTS OF FEDERAL** | : | |
| **PRISON CAMP CANAAN, HARLEY** | : | |
| **LAPPIN, FEDERAL BUREAU OF** | : | |
| **PRISONS, CASE MANAGER MARK** | : | |
| **RENDA, COUNSELOR ART** | : | |
| **ROBERTS, CAMP** | : | |
| **ADMINISTRATOR JULIE NICKLIN,** | : | |
| **CAMERON LINDSEY, UNITED** | : | |
| **STATES OF AMERICA, MR.** | : | |
| **BENDER, LT. HESS, and SIX OR** | : | |
| **MORE UNKNOWN NAMED LT'S** | : | |
| **AND CORRECTIONAL OFFICERS** | : | |
| **OF USP CANAAN,** | : | |
| | : | |
| **Defendants** | : | |

**ORDER**

AND NOW, this 24th day of June, 2008, upon consideration of defendants'

motion to dismiss or, in the alternative, for summary judgment (Doc. 51), and for

the reasons set forth in the accompanying memorandum, it is hereby ORDERED

that the motion (Doc. 51) is GRANTED in part and DENIED in part as follows:

    1.    The motion (Doc. 51) is GRANTED in part as follows:

        a.    All claims against defendants "One or More Unknown Named
Confidential Informants of Federal Prison Camp Canaan" and
"Six or More Unknown Named Lt's and Correctional Officers of
USP-Canaan" are DISMISSED.

b.  All <u>Bivens</u> claims against defendants the Federal Bureau of Prisons and the United States of America are DISMISSED.

c.  All claims for injunctive relief are DISMISSED as moot.

d.  Judgment will be entered in favor of defendants and against plaintiff with respect to all claims pursuant to the Federal Tort Claims Act, all <u>Bivens</u> claims that accrued during or after the May 29, 2006 meeting, and all <u>Bivens</u> claims relating to the denial of access to religious materials and to plaintiff's prison work status.

e.  All claims of conspiracy pursuant to 42 U.S.C. § 1985 and all <u>Bivens</u> equal protection claims are DISMISSED.  Plaintiff is granted leave to file an amended complaint with respect to the claims contained in Paragraph 1.e on or before July 9, 2008.[1] See <u>Grayson v. Mayview State Hosp.</u>, 293 F.3d 103, 108 (3d Cir. 2002).

2.  The motion (Doc. 51) is otherwise DENIED.

3.  The Clerk of Court is directed to DEFER the entry of judgment until the conclusion of this case.

  S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge

---

[1]  Plaintiff is advised that he is not required to file an amended complaint for the instant matter to proceed.  Plaintiff shall only file an amended complaint if the dismissed claims "are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law" and if "the factual contentions have evidentiary support, or, if specifically so identified, will likely have evidentiary support after reasonable opportunity for further investigation or discovery."  FED. R. CIV. P. 11(b).  Absent a timely filed amended complaint, the above-captioned case shall proceed on the claims that were not dismissed in the accompanying memorandum.