# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **FREDERICK BANKS,** | : | CIVIL ACTION NO. 1:06-CV-1127 |
| Plaintiff | : | (Judge Conner) |
| v. | : | |
| **HARLEY LAPPIN, MARK RENDA, ART ROBERTS, JULIE NICKLIN, CAMERON LINDSEY, MR. BENDER,** and **LT. HESS,** | : | |
| Defendants | : | |

## **MEMORANDUM**

Plaintiff Frederick Banks ("Banks"), a federal inmate formerly incarcerated at the Canaan Federal Prison Camp in Waymart, Pennsylvania, is proceeding with this civil rights action via an amended complaint. (Doc. 38.) By prior memorandum and order, summary judgment was granted in favor of defendants and against plaintiff with respect to all claims raised pursuant to the Federal Tort Claims Act, all Bivens claims that accrued on or after May 6, 2006, and all Bivens claims relating to the denial of access to religious materials, the denial of equal protection, to Banks' prison work status, and to all claims of conspiracy pursuant to 42 U.S.C. § 1985. (See Doc. 59 at 38.) A variety of Bivens claims remain, to wit: (1) First Amendment claims alleging the denial of access to the courts and retaliation; (2) a Fourth Amendment invasion of privacy claim; and (3) Eighth Amendment claims alleging that Banks' cell conditions were substandard, that he was denied adequate medical care, and that he was denied adequate recreation time. Defendants now

seek summary judgment on these remaining claims. For the reasons that follow, defendants' motion for summary judgment will be granted in part and denied in part.

I. **Statement of Facts**[1]

The instant litigation has been ongoing since June 2006, and the court thoroughly detailed Banks' allegations in its memorandum (Doc. 59) dated June 24, 2008. Exhaustive repetition of those allegations is unnecessary and the court will limit the factual description to that which is required of the instant disposition.

On April 17, 2006, Banks was transferred to the Federal Prison Camp and United States Penitentiary at Canaan ("USP Canaan"), where he was temporarily placed in the institution's secure housing unit ("SHU"). Banks claims that once he realized that he would be spending a significant amount of time in the SHU, he began to request access to the law library, various legal papers, several individuals' mailing addresses, a telephone, and stamps. (See Doc. 38 ¶¶ 27, 30.) Banks contends that he needed each of these items because at that time, he was a litigant in at least four cases pending in federal court. Prison officials allegedly ignored Banks' requests and, as a result, Banks purportedly missed multiple deadlines in his sundry court cases. (See id. ¶ 33.)

---

[1] Given the applicable standard of review for a motion for summary judgment, the court will present the facts in the light most favorable to Banks, who is the non-movant. See infra Part II.

In addition, Banks claims that the cell in which he was housed was "filled with mites and must from the vent"—conditions that allegedly resulted in Banks coughing and "chronically choking on his own vomit." (Id. ¶ 27.) During one such coughing fit, Banks avers that he "slammed his stomach and back onto his bunk bed . . . to force air into his poisoned lungs." (Id.) This incident allegedly resulted in lasting physical injury, for which prison officials denied Banks treatment. (Id.) Banks also asserts that defendants "opened and read not only [his] personal mail[,] but [also] his legal mail to pry into [his] personal legal affairs."[2] (Id. ¶ 9.) Banks contends that he attempted to levy complaints regarding his treatment in the SHU, but that prison officials blocked his ability to do so. (See id. ¶¶ 30-31.) According to Banks, prison officials' uncooperative behavior was an effort to retaliate against him for filing multiple lawsuits against various employees of USP Canaan. (See id. ¶ 9.)

Banks was transferred from the SHU on May 3, 2006, when a general population bed became available at USP Canaan's satellite camp. (Doc. 66-2, Declaration of L. Cunningham dated August 21, 2008 ("Cunningham Dec. 2"), at 23, ¶¶ 2-3.) Banks alleges that for the sixteen days that he was in the SHU, prison officials violated his First, Fourth, and Eighth Amendment rights. Specifically, Banks' contentions are as follows: (1) that his access to the courts was obstructed in

---

[2] Banks does not identify the time frame in which prison officials purportedly conducted searches of his mail. It is therefore not clear that these alleged actions occurred while Banks was incarcerated in the SHU.

3

violation of the First Amendment, (see Doc. 38 ¶¶ 26-31); (2) that prison officials retaliated against him for filing administrative grievances, (see id. ¶ 9); (3) that prison officials unconstitutionally invaded his privacy by opening and reading his mail, (see id.); (4) that the conditions of his cell fell below those required by the Eighth Amendment, (see id. ¶ 27); (5) that he was denied daily recreation time in violation of the Eighth Amendment, (see id.); and (6) that he was denied adequate medical care in violation of the Eighth Amendment, (see id.).

Defendants have previously moved to dismiss these claims on the basis of procedural default. Banks alleges that although he made attempts to utilize the prison grievance procedures, defendants thwarted his attempts to do so. (See, e.g., Doc. 71 at 4-5.) In fact, Banks states that "during the entire [16] days [he was in the SHU,] no administrative remedies were available to [him] because the Defendants failed to furnish [him] with the requested remedies."[3] (Id. at 5.) On September 19, 2008, defendants moved for summary judgment. (See Doc. 65.) The motion has been fully briefed and is ripe for disposition.

## II. Standard of Review

Through summary adjudication the court may dispose of those claims that do not present a "genuine issue as to any material fact" and for which a jury trial would be an empty and unnecessary formality. See FED. R. CIV. P. 56(c). The

---

[3] The exhaustion issue was addressed by the court in its dismissal memorandum dated June 24, 2008. (See Doc. 59 at 11-18.) The court therein dismissed each of Banks' claims save for those that accrued while he was incarcerated in the SHU from April 17 to May 3, 2006.

4

burden of proof is upon the non-moving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief. Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); FED. R. CIV. P. 56(e); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party on the claims. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-57 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986); see also FED. R. CIV. P. 56(c), (e). Only if this threshold is met may the cause of action proceed. Pappas, 331 F. Supp. 2d at 315.

## III. **Discussion**

Defendants assert that Banks failed to exhaust his administrative remedies with respect to all remaining claims. In the alternative, defendants argue that even if the exhaustion requirement may be excused, Banks' First Amendment access to the courts claim must nonetheless fail on the merits. The court will address defendants' exhaustion arguments before turning to the merits of Banks' access to the courts claim.

### A. **Exhaustion of Administrative Remedies**

The Prison Litigation Reform Act ("PLRA") requires prisoners to present their claims through an administrative grievance process before seeking redress in federal court. The Act specifically provides as follows:

> No action shall be brought with respect to prison conditions under
> section 1983 of this title, or any other Federal law, by a prisoner confined

5

> in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). Prisoners must comply with the PLRA exhaustion requirement as to any claim that arises in the prison setting, regardless of the nature of the claim or the relief sought. See Porter v. Nussle, 534 U.S. 516, 532 (2002); Booth v. Churner, 532 U.S. 731, 741 n.6 (2001). Furthermore, courts are not permitted to "excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis." Nyhuis v. Reno, 204 F.3d 65, 73 (3d Cir. 2000) (quoting Beeson v. Fishkill Corr. Facility, 28 F. Supp. 2d 884, 894-95 (S.D.N.Y. 1998)); see also Woodford v. Ngo, 548 U.S. 81, 92-94 (2006) (explaining that the PLRA mandates that inmates "properly" exhaust their claims before filing suit in federal court).

In order to properly exhaust his or her claims, a prisoner must "compl[y] with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Woodford, 548 U.S. at 90-91. Such requirements "eliminate unwarranted federal-court interference with the administration of prisons, and thus seeks to 'affor[d] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.'" Id. at 93 (quoting Porter, 534 U.S. at 525). Failure to comply with the procedural requirements of the prison's grievance system will result in a procedural default of the claim. Spruill v. Gillis, 372 F.3d 218, 227-32 (3d Cir. 2004) ("[P]rison

6

grievance procedures supply the yardstick for measuring procedural default.") A procedural default prohibits a prisoner from bringing his or her claim in federal court absent equitable considerations that warrant judicial review of the claim. See id. at 227-32; Gallego v. United States, No. Civ. 1:CV-02-1157, 2005 WL 1653166, at *2 (M.D. Pa. July 8, 2005).

The exhaustion procedure to be utilized by federal inmates like Banks is the administrative remedy protocol established by the Bureau of Prisons ("BOP") and set forth at 28 C.F.R. §§ 542.10-542.19. Pursuant to this protocol, an inmate first must present his complaint to staff, and staff must attempt to resolve informally any issue before an inmate files a request for administrative relief. See § 542.13(a). If informal resolution proves unsuccessful, the inmate may raise the complaint with the warden of the institution where he or she is confined. See id. An inmate has twenty calendar days from the date of the alleged injury within which to complete this informal resolution process. See § 542.14(a). If an inmate is dissatisfied with the response received during the informal resolution process, he or she may appeal the decision to the Regional Office and the General Counsel of the BOP. See § 542.15. A BOP decision is not final—and thus not reviewable—until relief has been denied by the General Counsel's Office. Id. If at any point an inmate misses a deadline imposed by federal regulations, BOP policy requires that the inmate seek an extension of time within which to file his or her grievance. See § 542.14(b). Acquisition of an extension requires that an inmate provide a "valid reason for the delay." Id.

As noted in the court's prior dismissal memorandum, Banks has conceded that he failed to exhaust a number of his claims, but he argues that this failure should be excused because prison officials obstructed his ability to utilize the prison's grievance process. (See Doc. 59 at 13-15; see also Doc. 71 at 2, ¶¶ 15, 27.) Banks claims that he attempted "to exhaust [his] remedies the entire time he was in the SHU, but the majority of the time he could not see a staff member to provide him with a physical body to make the requests." (Doc. 71 at 4.) Furthermore, Banks alleges that prison officials refused to provide him with BOP letterhead in order to set forth his grievances. (See id. at 2, ¶ 10.) According to Banks, this obstructive conduct continued for "the entire time he was in the SHU." (See id. at 4.) Banks was transferred from the SHU to general population on May 3, 2006; he does not claim that his ability to file grievances was obstructed after this transfer date.[4]

Banks has filed a sworn declaration containing factual detail supportive of his assertion that prison officials obstructed his ability to file grievances during his incarceration in the SHU. (See Doc. 71 at 8.) Defendants fail to refute this description of events and instead allow Banks' declaration to stand uncontested.

---

[4] The court previously held that "to the extent that any of Banks' claims accrued on or after May 6, 2006, his failure to exhaust is not excused because the administrative grievance process became available to him within the twenty day period dictated by the PLRA." (Doc. 59 at 17.) Banks continues to reference claims that accrued after he was transferred from the SHU; however, because the court has already ruled that Banks failed to exhaust these claims, it will not address them in this memorandum.

8

Therefore, in the absence of a factual dispute, the court will accept the contention that BOP officials obstructed Banks' ability to comply with appropriate BOP protocol during the time that he was incarcerated in the SHU.[5] See Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001) (explaining that at summary judgment, a court "must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor," and that the non-movant's evidence "must amount to more than a scintilla, but may amount to less . . . than a preponderance" (internal quotations and citations omitted)); see also Celotex, 477 U.S. at 323 (explaining that "a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes

---

[5] Defendants argue that at most, Banks was obstructed from filing his grievances during the four-day period between April 18, 2006 and April 21, 2006. (See Doc. 66 at 13-15.) According to defendants, Banks filed a document in a separate matter stating that he "requested administrative remedies from the counselor, case manager and camp administrator on April 18, 19, 20, and 21. When it became apparent that [he] would not receive the remedies before and after [he] filed the complaint [he] stopped asking because [he] had exhausted [his] available administrative remedies since Canaan administration curtailed the exhaustion process." (Id. at 14 (quoting Banks' affidavit filed in Banks v. Six or More Unknown Lts. & Correctional Officers of USP Canaan, Civ. No. 1:CV-06-1228 (M.D. Pa.)). Although this evidence suggests that Banks was obstructed from filing on the days he specifies, it does not eliminate the possibility that he was obstructed during the rest of his imprisonment in the SHU. Furthermore, Banks has submitted a sworn declaration in this matter that at least implies that his ability to file was impeded during the entire time that he was in the SHU. (See Doc. 71 at 8.) To the extent that Banks has made conflicting statements under oath in other civil matters, such nonconforming testimony may be explored at trial.

9

demonstrate the absence of a genuine issue of material fact" (quoting FED. R. CIV. P. 56(c))).

Misconduct by prison officials that impedes or prevents an inmate from complying with the PLRA may render administrative remedies unavailable and excuse an inmate's exhaustion requirement. See Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003); see also Brown v. Croak, 312 F.3d 109, 111 (3d Cir. 2002) (explaining that an inmate need only exhaust remedies that "are available"). Affirmative misconduct may include prison officials' refusal to provide appropriate grievance forms in response to inmate inquiries, see Mitchell, 318 F.3d at 529, as well as mere failure to respond to a prisoner's complaints, see Camp v. Brennan, 219 F.3d 279, 281 (3d Cir. 2000). Banks alleges that officials refused to provide him with appropriate BOP letterhead and that they simply ignored his complaints when he made them. In the absence of a factual dispute concerning Banks' allegations of obstruction, the court finds that these actions constitute official misconduct sufficient to render the grievance process unavailable for purposes of the PLRA. As a result, Banks' exhaustion requirement is excused for those claims that accrued during his incarceration in the SHU.

Defendants contend that even if Banks can show that prison officials obstructed his ability to pursue his administrative remedies within the twenty-day time frame established by § 542.14, he was nonetheless required by the PLRA to seek an extension of time when he was transferred to the prison's general population on May 3, 2006. (See Doc. 66 at 16-17.) Under § 542.14(b)

10

> [w]here an inmate demonstrates a valid reason for delay, an extension in filing time may be allowed. In general, valid reason for delay means a situation which prevented the inmate from submitting the request within the established time frame. Valid reasons for delay include the following: an extended period in-transit during which the inmate was separate from documents needed to prepare the Request or Appeal; an extended period of time during which the inmate was physically incapable of preparing a Request or Appeal; an unusually long period taken for informal resolution attempts; indication by an inmate, verified by staff, that a response to the inmate's request for copies of dispositions under § 542.19 of this part was delayed.

§ 542.14(b). Defendants argue that it was "incumbent upon Banks, under the strictures of the PLRA, to seek those extensions [required by § 542.14(b)] by asserting that staff obstruction" was the cause of his failure to timely file. (Doc. 66 at 17-18.)

It is undisputed that Banks did not request an extension under § 542.14(b). The court nonetheless finds that he was not required to do so in order to preserve his federal claims. Although at least one circuit court of appeals has held that a failure to seek an extension results in procedural default, see McCoy v. Gilbert, 270 F.3d 503, 510-11 (7th Cir. 2001), the Third Circuit has never so held.[6] In the absence of such controlling precedent—and in the absence of record evidence that Banks'

---

[6] The court is aware of at least two unpublished district court cases within this circuit requiring an inmate to utilize the extension procedure described in § 542.14(b). See Garrett v. DeRosa, No. Civ. A. 05-157(FLW), 2006 WL 561957, at *6, 8 (D.N.J. Mar. 2, 2006); Vega v. U.S. Dep't of Justice, No. Civ. 1:CV-04-2398, 2005 WL 2931841, at *7 (M.D. Pa. Nov. 5, 2005) (Caldwell, J.). Neither of these cases involve instances in which prison officials actively obstructed an inmate's ability to pursue administrative remedies.

11

access to the grievance process was unimpeded—the court will not impose this added burden upon Banks.

**B.   The Merits of Banks' *Bivens* Claims**

"A Bivens action, which is the federal equivalent of the § 1983 cause of action against state actors, will lie where the defendant has violated the plaintiff's rights under the color of federal law."[7] Brown v. Philip Morris, Inc., 250 F.3d 789, 800 (3d Cir. 2001); see also Egervary v. Young, 366 F.3d 238, 246 (3d Cir. 2004). "[C]ourts have generally relied upon the principles developed in the case law applying section 1983 to establish the outer perimeters of a Bivens claim against federal officials." Schrob v. Catterson, 948 F.2d 1402, 1409 (3d Cir. 1991). In the instant matter, Banks' Bivens claims are premised upon violations of his First, Fourth, and Eighth Amendment rights. Specifically, Banks contends that prison officials obstructed his access to the courts; that they invaded his privacy by improperly opening his mail; that they retaliated against him for attempting to pursue administrative remedies; that they confined him to a cell that did not meet minimal health standards; that they denied him one hour of recreation time per day; and that they denied him adequate medical care. Each of these alleged constitutional violations purportedly occurred during the sixteen days that Banks was incarcerated in the SHU. Defendants request summary judgment only on Banks' access to the courts claim. The court will limit its inquiry accordingly.

---

[7] Defendants apparently concede, for purposes of the instant motion, that they were acting under color of federal law at all times relevant hereto.

12

### 1. **First Amendment Access to the Courts**

"[P]risoners have a constitutional right of access to the courts." Bounds v. Smith, 430 U.S. 817, 821 (1977). In order to state a claim for denial of this right, a prisoner must plead that he or she has suffered an "actual injury" arising from the challenged conduct of the defendants. See Lewis v. Casey, 518 U.S. 343, 349-50 (1996). Banks claims that after he was incarcerated in the SHU on April 17, 2006, he began "to request . . . access to the [l]aw [l]ibrary, telephone, and stamps" in order to comply with deadlines imposed in various ongoing legal matters.[8] (See Doc. 38 ¶ 26.) Banks contends that prison officials denied each of his requests, and continued to do so for the entirety of his stay in the SHU. (See id. ¶¶ 26-31.) In addition, Banks claims that he was deprived of his "legal papers that he was traveling with." (Id. ¶ 30.) As a result of defendants' actions, Banks avers that he missed multiple deadlines in his sundry court cases. (See id. ¶ 33.)

In order to succeed on his access to the courts claim, Banks must establish that defendants' actions caused him "actual injury." See Roman v. Jeffes, 904 F.2d 192, 198 (3d Cir. 1990). Prisoners do not suffer actual injury merely because their access to a law library or legal assistance is restricted. See Lewis, 518 U.S. at 351. Rather, "[w]here prisoners assert that defendants' actions have inhibited their

---

[8] In April of 2006, Banks was actively litigating the following matters: (1) Banks v. 3311 E. Carson St., Civ. A. No. 04-1771 (W.D. Pa.) (referred to by Banks as Banks v. Hull); (2) United States v. Vampire Nation, No. 05-1715 (3d Cir.) (referred to by Banks as United States v. Banks); (3) United States v. Banks, No. 03-CR-0245 (W.D. Pa.); and (4) United States v. Banks, No. 04-CR-0176 (W.D. Pa.).

13

opportunity to present a past legal claim, they must show (1) that they . . . lost a chance to pursue a 'nonfrivolous' or 'arguable' underlying claim; and (2) that they have no other 'remedy that may be awarded as recompense' for the lost claim other than in the present denial of access suit." Monroe v. Beard, 536 F.3d 198, 206 (3d Cir. 2008) (quoting Christopher v. Harbury, 536 U.S. 403, 415 (2002)).

Defendants argue that an examination of the docket in each of the four cases which Banks was litigating undermines his assertion of missed deadlines. A review of the evidentiary record bears out defendants' contention. Banks did not miss a single court-imposed deadline while housed in the SHU in any of the four cases that he was then litigating.[9] (See Doc. 66, Ex. 5 at 52, 62, 90, 106.) Furthermore—and contrary to Banks' assertions—it is clear that Banks was *active* in the prosecution of his claims during this time period. In Banks v. 3311 East Carson Street, Civ. A. No. 04-1771 (W.D. Pa.), Banks filed a document with the court on April 26, 2006, ten days after he was placed in the SHU. (See id. at 62.) In United States v. Vampire Nation, No. 05-1715 (3d Cir.), Banks was represented by counsel during the time that he was incarcerated in the SHU; Banks' counsel filed a letter with the court regarding a pending appeal on May 4, 2006, one day after Banks was transferred to general population. (See id. at 52.) In United States v. Banks, No. 03-CR-0245 (W.D. Pa.), Banks filed a notice of his change of address on April 26, 2006. (See id. at 106.) Finally, in United States v. Banks, No. 04-CR-0176 (W.D. Pa.), Banks filed a

---

[9] Although he repeatedly claims that he missed "multiple court deadlines," Banks never identifies a single deadline that he missed.

14

notice of his change of address on April 26, 2006, a motion for an injunction on April 28, 2006, and an *ex parte* motion for the return of his social security card on May 3, 2006. (See id. at 90.) In the face of this record evidence demonstrating that he did in fact file multiple court documents during the time that he was incarcerated in the SHU, Banks is silent.[10] His silence is deafening and, moreover, fatally undermines his access to the courts claim. See Celotex, 477 U.S. at 324 (explaining that the non-movant must "go beyond the pleadings" to demonstrate the existence of a dispute of fact). Summary judgment is warranted.

2. **Remaining *Bivens* Claims**

Defendants have not moved for summary judgment on the merits of Banks' remaining Bivens claims—namely, his contention that defendants retaliated against

---

[10] Banks' only response to the record evidence presented against him is to claim that he "wanted to file a pleading or letter in [United States v. Vampire Nation] . . . requesting that the oral argument be transcribed and preserving argument strategies." (Doc. 71 ¶ 35.) Banks argues that "[i]f [he] would have been able to file a motion to have the oral argument transcribed he could have raised ineffective assistance on appeal . . . and as a result would have won his appeal on rehearing . . . ." (Id.) As a matter of Sixth Amendment law, this contention makes no sense. However, assuming *arguendo* that Banks did in fact intend to file such a motion, his thwarted intention does not demonstrate actual injury. The loss of the chance to request that oral argument be transcribed does not constitute a lost opportunity to pursue a nonfrivolous legal claim. See Monroe, 536 F.3d at 206. What is more, Banks was represented by counsel in United States v. Vampire Nation and it is therefore unlikely that the Third Circuit would have entertained Banks' *pro se* motion had he been able to submit it. See United States v. Vampire Nation, 451 F.3d 189, 206 n.17 (3d Cir. 2006) (rejecting *pro se* motions filed by Banks while he was represented by counsel and explaining that the courts are not required to entertain a counseled defendant's *pro se* arguments). Consequently, Banks' inability to file his motion is insufficient to constitute actual injury, and is thus irrelevant for purposes of the present claim.

15

him in violation of the First Amendment, that defendants invaded his privacy in violation of the Fourth Amendment, that defendants incarcerated him in a cell that failed to meet the requirements of the Eighth Amendment, and that he was denied adequate recreation time and medical care under the Eighth Amendment. In the absence of a motion for summary judgment, the court will not opine on the merits of these claims. Ultimate disposition of Banks' remaining constitutional torts will therefore be reserved for the finder of fact at trial.

**IV.** **Conclusion**

For the reasons set forth above, defendants' motion for summary judgment will be granted in part and denied in part. The motion will be granted with respect to Banks' First Amendment access to the courts claim. The motion will be denied in all other respects.

An appropriate order follows.

                                        S/ Christopher C. Conner
                                        CHRISTOPHER C. CONNER
                                        United States District Judge

Dated:       August 10, 2009

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **FREDERICK BANKS,** | : | **CIVIL ACTION NO. 1:06-CV-1127** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| | : | |
| v. | : | |
| | : | |
| | : | |
| **HARLEY LAPPIN, MARK RENDA,** | : | |
| **ART ROBERTS, JULIE NICKLIN,** | : | |
| **CAMERON LINDSEY, MR.** | : | |
| **BENDER, and LT. HESS,** | : | |
| | : | |
| **Defendants** | : | |

# **O R D E R**

AND NOW, this 10th day of August, 2009, upon consideration of defendants' motion (Doc. 65), and for the reasons set forth in the accompanying memorandum, it is hereby ORDERED that:

1. Defendants' motion (Doc. 65) for summary judgment is GRANTED in part and DENIED in part as follows:

   a. The motion is GRANTED with respect to the First Amendment access to the courts claim. Judgment will be entered for the defendants on this claim.

   b. The motion is DENIED in all other respects.

2. The Clerk of Court is directed to DEFER the entry of judgment until the conclusion of this case.

                                                            S/ Christopher C. Conner
                                                           CHRISTOPHER C. CONNER
                                                           United States District Judge